**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2333-23

TYRONE JON TARVER,

     Respondent-Respondent,

v.

JEFFERY WINGFIELD,
ORANGE BOARD OF
EDUCATION, ESSEX COUNTY,

     Petitioner-Appellant.

_____

Submitted September 23, 2025 – Decided October 27, 2025

Before Judges Gilson and Perez Friscia.

On appeal from New Jersey Commissioner of Education, Docket No. 14-11/23A.

The Busch Law Group LLC, attorneys for appellant (Alyssa K. Weinstein, of counsel and on the briefs).

Tyrone Jon Tarver, respondent pro se.

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Commissioner of Education (Donna Arons, Assistant Attorney General, of counsel;

Rachel B. Kristol, Deputy Attorney General, on the brief).

PER CURIAM

This appeal involves questions of whether a member of the Orange Board of Education (the Board) violated the School Ethics Act (the Act), N.J.S.A. 18A:12-21 to -34, by forwarding two Board emails to non-Board members. Jeffrey Wingfield appeals from a final decision by the Commissioner of Education (the Commissioner), which affirmed a decision by the School Ethics Commission (the Commission). The Commission determined that Wingfield violated N.J.S.A. 18A:12-24.1(e) and (g) by forwarding two emails, which he received from the Board's president, to town officials who were not Board members. Because the Commissioner's decision was based on a summary disposition record and there are disputed issues of fact concerning whether the emails contained deliberative or confidential information, we vacate the Commissioner's decision and remand with direction that the matter be sent back to the Office of Administrative Law (OAL) to complete the contested hearing regarding this matter.

I.

We discern the facts from the administrative record, noting that the Commissioner's and Commission's decisions were based on a summary

A-2333-23

disposition made by an administrative law judge (ALJ) after the ALJ had heard only the case presented by the complainant.

In 2020, Tyrone Jon Tarver was the president of the Board and Wingfield was a Board member. In late September 2020, representatives of the National Football League (NFL) Films contacted the school district seeking permission to film a show at Bell Stadium, which is Orange High School's football stadium. NFL Films was requesting to film the show on October 5, 2020, but the Board's next meeting was scheduled for October 13, 2020.

On October 1, 2020, at 5:39 pm, Dr. Gerald Fitzhugh, the superintendent of the Orange School District, sent Tarver an email asking to know if the Board "will allow retroactive approval" of NFL Films' facility request. That same evening, Tarver forwarded the superintendent's email to all Board members. In his forwarding email, Tarver (1) explained that the facility request had been made; (2) stated that there was insufficient time for the Board to formally vote on the request; and (3) asked members to email him that same evening if they anticipated voting against the request when they consider it retroactively at their next Board meeting.

Tarver's full email, which attached the email from Fitzhugh, stated:

Good evening Board Members.

3

A-2333-23

Dr. Fitzhugh has informed me that an opportunity has arisen for the district.

NFL Films has contacted the district. It is in regards to a show called Peyton's Place. What NFL Films has proposed is for former NFL Quarterback Peyton Manning to come to Orange to interview Former NFL Cornerback Darrell Green.

They have asked to utilize Bell Stadium for the interview.

A facilities request form was submitted, but only yesterday, which is well after our deadline to consider a Facilities Request. In addition, a Hold Harmless Agreement, and other paperwork, were reviewed by Atty. Kleen, and she approved all of the paperwork for our consideration.

A $5,000 donation to the district was also agreed upon by NFL films.

Dr. Fitzhugh needs to know if the Board will retroactively approve this NFL Films Facilities Request at our Tuesday, October 13, 2020 Board Meeting.

NFL Films need to know of our anticipated approval no later than tomorrow morning.

Please do not reply to this email with "Yes" or "Absolutely" or any positive comments. I am doing my best to avoid this becoming a meeting via email.

Please only reply if you anticipate voting "NO" for this retroactive Facilities Request Resolution during our October 13 Board Meeting. But I need any "NO" replies before the end of this evening.

A-2333-23

Thank you.

Best Regards,

Tyrone Jon Tarver
Board President
Orange Board of Education

Later that same evening, Wingfield copied and pasted Tarver's email and forwarded it to the Mayor of Orange, the Town's attorney, and an Orange councilwoman. Wingfield added: "I HAVE COPIED AND PASTE[D] FROM MY BOARD EMAIL TO YOU. . . . You should know the following:".

No Board members sent Tarver an email on October 1 , 2020, or thereafter, indicating that they had any objections to NFL Films' facility request.

The following day, on October 2, 2020, the superintendent sent an email to all Board members stating: "Please read below. Thank you for working with me and for our students to make this happen." Below that statement, the superintendent copied and pasted an email he had received from the Orange athletic director, confirming that NFL Films would donate $5,000 to the Orange School District for the use of Bell Stadium. Wingfield then copied and pasted that email and sent it to the Mayor of Orange, the town's attorney, and an Orange councilwoman.

5

The filming of Peyton's Place occurred at Bell Stadium on October 5, 2020. No party contends that anything inappropriate occurred during the production.

On October 13, 2020, the Board retroactively approved NFL Films' facility request. The Board's agenda for its October 13, 2020 meeting, which had been publicly posted before the meeting, stated that NFL Films' facility request would be considered. The Board's vote to retroactively approve NFL Films' facility request was conducted during the public portion of the meeting.[1] It is also undisputed that the school district received the $5,000 donation from NFL Films.

Over a year later, in December 2021, Tarver filed a school ethics complaint against Wingfield. That complaint included multiple allegations set forth in fifty-one counts. Wingfield moved to dismiss the entire complaint and the Commission dismissed counts one through forty-five. The Commission denied the motion to dismiss counts forty-six through fifty-one. Those counts

---

[1] We asked the parties to provide supplemental briefing on: (1) whether the facilities request are listed on the Board's agenda and disclosed to the public; and (2) whether facilities requests votes are conducted during the public part of Board meetings. Tarver and Wingfield responded that the NFL Films' facility request was listed on the Board's agenda, and the vote was conducted during the public portion of the Board's October 13, 2020 meeting.

concerned the allegations that Wingfield had violated N.J.S.A. 18A:12-24.1(c), (e), and (g), when he forwarded the two emails on October 1 and 2, 2020 to non-Board members. The Commission determined that those allegations involved disputed issues of fact and, therefore, transferred those counts to the OAL for a contested hearing before an ALJ.

The hearing before the ALJ began on January 30, 2023. Tarver presented his case, during which he testified, and he called Wingfield to testify. Tarver then rested and Wingfield moved for a directed verdict. The ALJ allowed that motion and treated it as a motion for summary disposition.

After permitting the parties to brief the summary disposition motion, on August 1, 2023, the ALJ issued his decision. In doing so, he made findings of facts and conclusions of law. Ultimately, the ALJ concluded that Tarver had failed to prove that Wingfield had violated any provision of the Act.

In making that decision, the ALJ found that Wingfield had forwarded the two emails he received on October 1, 2020 and October 2, 2020 to non-Board members. The ALJ also found, however, that the emails did not contain deliberative or confidential information. In that regard, the ALJ determined that the emails were not confidential because the information in the emails was already known to non-Board members, including a location scout working for

NFL Films. The ALJ also found that any negotiations regarding the NFL Films' facility request had concluded by the time that the superintendent sent his first email to Tarver on the evening of October 1, 2020.

The ALJ also found that Tarver had not asked for any views or opinions of the Board members in his email. Additionally, the ALJ found that the decision to grant the facility request was effectively finalized before Wingfield forwarded the first email to non-Board members. The ALJ also noted that Tarver's and the superintendent's emails did not indicate that the matters discussed were confidential or privileged.

Based on those findings, the ALJ concluded that Wingfield had not violated subsections (c), (e), or (g) of N.J.S.A. 18A:12-24.1 and dismissed the claims. No party filed exceptions to the ALJ's initial decision.

On October 17, 2023, the Commission issued a decision adopting the ALJ's determination that Wingfield did not violate N.J.S.A. 18A:12-24.1(c). The Commission, however, rejected the ALJ's decision concerning subsections (e) and (g) of the Act. In contrast to the ALJ's findings, the Commission found that Wingfield had violated both subsections (e) and (g) of N.J.S.A. 18A:12-24.1.

Concerning subsection (e), the Commission found that by copying and pasting a Board email and sending that information to town officials, Wingfield had taken action that was beyond his scope of duties as a Board member and that information had the potential to compromise the Board. In that regard, the Commission stated: "Revealing the inner communications of the Board is not only inappropriate but, by its nature, has the potential to compromise the Board."

The Commission also found that the filming had not been publicized, and Wingfield had taken it upon himself to spread confidential information, which he only knew about because he was a Board member. Thus, the Commission found that Wingfield violated subsection (g) of N.J.S.A. 18A:12-24.1 because he "took action to make public, reveal or disclose information that was not public."

The Commission also found that the October 1, 2020 email made it clear that the Board had not yet voted on the matter and the email was designed to give Board members an opportunity to indicate whether they anticipated voting against the facility request when it came before the Board at its next meeting. In making that finding, the Commission determined that the email encompassed deliberative material because it was part of the deliberative process that would lead to the Board's ultimate vote.

A-2333-23

After finding that Wingfield had violated N.J.S.A. 18A:12-24.1(e) and (g), the Commission determined that the appropriate sanction was a reprimand. Wingfield appealed from the Commission's decision to the Commissioner.

On February 20, 2024, the Acting Commissioner issued a final agency decision adopting the Commission's decision and imposing a reprimand for Wingfield's conduct. In his written decision, the Commissioner found that Wingfield had violated both N.J.S.A. 18A:12-24.1(e) and (g).

Regarding subsection (e), the Commissioner found that the record established that Wingfield "unilaterally and independently took private action beyond the scope of his duties as a Board member when he disseminated the email content about the facilities request to the non-Board members." The Commissioner reasoned that by receiving that information, Orange Township officials could have attempted to stop NFL Films from filming or could have shared information about the event that might have attracted large crowds to Bell Stadium when the filming took place on October 5, 2020, which was during the COVID-19 pandemic.

Concerning subsection (g), the Commissioner found that the October 1, 2020 email from Tarver to Board members was "pre-decisional, deliberative,

and therefore confidential." To support that conclusion, the Commissioner cited an unpublished case issued by this court in 2024.[2]

The Commissioner also rejected Wingfield's argument that the matter should be remanded to the OAL. The Commissioner reasoned that Wingfield had moved for summary decision and there were no disputed issues of material fact. In summary, the Commissioner upheld the Commission's decision that Wingfield had violated the Act and should receive a reprimand.

Wingfield now appeals from the Commissioner's final agency decision.

## II.

On this appeal, Wingfield makes two arguments. First, he contends that the Commissioner's decision is not supported by sufficient credible evidence and, therefore, we should vacate it as arbitrary, capricious, or unreasonable. Second, and alternatively, he asserts that the matter should be remanded to the OAL to allow him to present his case and for the ALJ to make findings based on a complete record.

---

[2] We do not cite to unpublished cases because they do not constitute precedent. R. 1:36-3.

A. Our Standard of Review.

An appellate court's review of an administrative agency's final decision is limited. Seago v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, 257 N.J. 381, 391 (2024). An agency's decision will not be reversed unless "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitutions; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007) (citing In re Taylor, 158 N.J. 644, 656 (1999)). Nevertheless, this standard requires a "careful and principled consideration of the agency record and findings." Wojtkowiak v. N.J. Motor Vehicle Comm'n, 439 N.J. Super. 1, 13 (App. Div. 2015) (quoting Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988)).

B. The Alleged Ethics Violations.

The Commissioner determined that Wingfield had violated N.J.S.A. 18A:12-24.1(e) and (g). In doing so, the Commissioner adopted the Commission's findings and conclusions. Thus, no party is disputing that Wingfield did not violate N.J.S.A. 18A:12-24.1(c).

The Act states in relevant part:

12

A school board member shall abide by the following Code of Ethics for School Board Members:

(e) I will recognize that authority rests with the board of education and will make no personal promises nor take any private action that may compromise the board.

. . . .

(g) I will hold confidential all matters pertaining to the schools which, if disclosed, would needlessly injure individuals or the schools. In all other matters, I will provide accurate information and, in concert with my fellow board members, interpret to the staff the aspirations of the community for its school.

[N.J.S.A. 18A:12-24.1(e) and (g).]

By its express terms, subsection (e) directs board members not to make personal promises or take "any private action that may compromise the board." N.J.S.A. 18A:12-24.1(e). There is no allegation that Wingfield made a personal promise. Instead, the question is whether he took private action that compromised the Board.

In finding a violation of subsection (e), the Commissioner determined that when Wingfield forwarded the emails concerning NFL Films' facility request, that action had the potential to harm the Board. In that regard, the Commissioner reasoned that "City officials could have attempted to prevent the event from taking place, thereby jeopardizing the donation promised to the district." The

13

Commissioner also reasoned that "the City officials could have shared information about the event with other members of the public, which could have attracted a large crowd at Bell Stadium during the height of the COVID-19 pandemic and/or caused NFL Films to reconsider its location for the show."

Those factual findings, however, are not supported by credible evidence in the record. There was no testimony or evidence concerning what Town officials might have done with the information Wingfield sent. Instead, the Commissioner appears to speculate as to what Town officials might have done. Moreover, the Commissioner's factual findings are inconsistent with the findings made by the ALJ. The ALJ expressly found that NFL Films' shoot was information that was already publicly available and that it was not confidential.

N.J.S.A. 18A:12-24.1(g) directs that a school board member must "hold confidential all matters pertaining to the schools which, if disclosed, would needlessly injure individuals or the schools." Accordingly, by its express terms a violation of subsection (g) requires the disclosure of confidential information. N.J.A.C. 6A:28-6.4(a)(7) (explaining that "[f]actual evidence of a violation of the confidentiality provision of [subsection (g)] shall include evidence that the respondent took action to make public, reveal, or disclose information that was not public . . . or information that was otherwise confidential . . .").

In finding a violation of subsection (g), the Commissioner relied in part on a prior Commissioner decision, <u>Lynch v. Skowronski,</u> which held that pre-decisional, deliberative information in Board emails is confidential. No. EEC 10213-19, final decision (Dec. 15, 2020). The Commissioner reasoned that Wingfield forwarded the October 1 email before the Board had decided it would approve the facility request. Thus, the Commissioner found that the information in the email was "pre-decisional, deliberative, and . . . confidential." The Commissioner further concluded that by forwarding the October 1 email, Wingfield "needlessly injured the schools."

There was no substantial credible evidence supporting those findings. Again, those findings are directly contrary to the findings made by the ALJ. The ALJ had found that the Board had effectively completed its deliberative process by the time Wingfield forwarded the first email. Additionally, the ALJ found that the emails did not include any deliberative or confidential material.

The Commissioner, as the head of an agency, can reject findings made by an ALJ. <u>See</u> N.J.S.A. 52:14B-10(c) ("The head of the agency, upon a review of the record submitted by the administrative law judge, shall adopt, reject or modify the recommended report and decision . . . .") In doing so, however, the Commissioner must make his alternative findings based on other credible

15

evidence in the administrative record. N.J.S.A. 52:14B-10(c) ("In rejecting or modifying any findings of fact, the agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record."); see also Donnerstag v. Koenig, 481 N.J. Super. 291, 302-03 (App. Div. 2025) (finding the Commission's decision arbitrary and capricious in part, because it did not identify credible evidence in the record to support its conclusion).

In this matter, the ALJ determined that there were no disputed issues of material fact and the credible material facts established that the emails did not contain deliberative information, nor did they contain confidential information. The Commissioner's denial of a remand did not account for the logical fact that by rejecting the ALJ's findings, the Commissioner was looking at the same record and making different factual findings. Therefore, the Commissioner had to point to other undisputed evidence that supported his finding that the emails did contain deliberative materials or confidential information. The Commissioner failed to point to any facts. Instead, he looked at the same facts found by the ALJ and effectively recharacterized the conclusions drawn from those facts.

Moreover, Wingfield contested whether the email contained deliberative or confidential information. Accordingly, to set aside the ALJ's findings, the Commissioner needed to point to undisputed facts that supported his contrary conclusions. See N.J.S.A. 52:14B-10(c). He did not do that. Rather, the Commissioner's findings were based on a record with disputed material facts.

We, therefore, remand this matter to the Commissioner with directions that he return the matter to the OAL for the completion of the contested hearing. On a full record, the ALJ will need to make factual findings concerning whether the emails included deliberative materials or confidential materials. The Commission and Commissioner, if requested, can then review the complete record. We express no views on the findings that should be made on the complete record, but, consistent with well-established law, we require that the findings be supported by substantial credible evidence.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2333-23